UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CAROL E. STEVENSON,           ) | |
|                                                            ) | |
|     Plaintiff,                 ) | |
|                                                            ) | |
| v.                                                       ) | Cause No. 1:05 CV 293 |
|                                                            ) | |
| CITY OF FORT WAYNE,         ) | |
|                                                            ) | |
|     Defendant                 ) | |

### OPINION OF DECISION AND ORDER

Presently before the court is Defendant, the City of Fort Wayne's, ("the City's") Motion for Summary Judgment filed on June 30, 2006. Although pursuant to N.D.IN. L.R. 56.1, a responsive brief was due within thirty days, plaintiff's counsel did not file a response to the motion. Under the theory that "[c]ourts have a responsibility to ensure that parties adhere to deadlines and are diligent in prosecuting their causes of action" *Alexander v. Board of Educ. of City of Chicago,* 44 Fed.Appx. 4, 6, 2002 WL 1926155, **2 (7th Cir. 2002), the undersigned's Deputy Clerk contacted Plaintiff's counsel to determine whether a response was forthcoming and whether the deadline for a responsive filing had been overlooked by counsel. At that time, Counsel orally advised the Deputy Clerk that no response was forthcoming because he believed the Defendant's motion was "well-taken."

Thinking that perhaps this reminder by Court personnel might trigger a filing by Plaintiff's counsel to notify the undersigned that the merits of the motion had been conceded, the court did not immediately rule on the City's Motion. To date, however, no motion to voluntarily dismiss the claim has been filed nor has there been any written indication in the record from Plaintiff's counsel that he concedes the merit of the motion. For this reason, the court is duty bound to recite the

1

applicable facts and undergo an analysis of the applicable law. *See Tobey v. Extel/Jwp Inc.,* 985 F.2d 330, 332 (7th Cir.1993) (failure to respond to a summary judgment motion does not automatically result in judgment against the non-moving party). As the Court will note later herein, however, the failure to respond to the motion has its consequences. For the following reasons, the City's Motion for Summary Judgment will be GRANTED.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992)(quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)).

Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute because the issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical

2

doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id*. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## FACTUAL BACKGROUND

As noted, Plaintiff's failure to respond to the City's motion has its consequences. First, this Court will accept as true any facts asserted in a nonmoving party's affidavits and facts supported by other admissible evidence , N.D.In.L.R. 56.1, so that Stevenson will in fact be conceding that facts properly supported by the City do exist. *Glass v. Dachel,* 2 F.3d 733, 739 (7th Cir.1993). Therefore, the properly supported and unopposed facts are as follows:

In April, 2004, Stevenson, a 20 year employee of the City of Fort Wayne, became employed by the Police Records Division, as a second shift information/computer input technician. The position is considered a clerical position, but requires a fair amount of "on your feet time" for various tasks such as waiting on customers, retrieving reports and records, etc. At all relevant times herein, Scott Ruf ("Ruf") supervised Stevenson's job performance. Ruf, in turn, reported to Susan Rarey ("Rarey") who reported to Steve Smith ("Smith").

Stevenson suffers from rheumatoid arthritis. In 2003, Ms. Stevenson requested and was granted FMLA leave on an intermittent basis for her rheumatoid arthritis. At the same time, Stevenson requested and was granted intermittent FMLA leave to care for her aging parents, who

3

each had serious medical conditions.[1]  By April 21, 2004, Stevenson had exhausted all of her available FMLA leave and paid time off.  Stevenson then missed work from April 21, 2004 until April 26, 2004 due to her own medical condition.  On April 26, 2004,  Stevenson's primary care physician, Dr. Coats, released her to return to work without restrictions.

Upon her return to work, Stevenson gave Ruf a Request for Reasonable Accommodation form, supported by a Physician's Certificate, which was also dated April 21, 2004, and signed by Dr. Ranochak, who practices with Dr. Coats.  Dr. Ranochak stated that Ms. Stevenson's rheumatoid arthritis was permanently disabling and he imposed significant workplace restrictions. According to Dr. Ranochak's statement, Ms. Stevenson was unable to stand for more than five minutes at a time and could not perform repetitive movements with her hands and arms.

Promptly upon receipt of Stevenson's request for accommodation, City officials scheduled a meeting to discuss the request.  Stevenson attended the meeting with Ruf,  Rarey, Mary Nelson-Janisse (Director of Risk Management for the City), and union representative, Barbara Hill.[2] During the meeting, the parties discussed the specific duties that Ms. Stevenson could not perform. Stevenson acknowledges that the essential duties of her job required frequent standing and sitting for such tasks as, waiting on customers and police officers, pulling records and reports, and sending faxes.  But, according to Dr. Ranochak's physician's statement and Stevenson's disability

---

[1]Ms. Stevenson's care of her parents consisted of assisting her mother with bathing, cleaning her parents' home, preparing their meals, taking them to doctors' appointments, and "the whole nine yards". (Dep. pp. 62-64.)

[2] Labor Relations Manager for the City, James Pilarski, participated in part of the meeting by telephone.

accommodation request form, Stevenson was unable to perform these essential functions.[3] In light of these permanent restrictions, Nelson-Janisse told Stevenson that the City was unable to provide any accommodations that would enable Stevenson to perform the essential functions of her job. After being informed that no available accommodation existed, Stevenson attempted to retract the forms she had submitted indicating that they were a mistake, that she had not read Dr. Ranochak's Physician's Statement before submitting it to the City, that she was not permanently disabled, and that she could regularly perform her job duties. (Stevenson Dep. pp. 53-54, 66-67; Verified Statement of Nelson-Janisse ¶9.) The union steward then asked if the form could be taken back to Dr. Coats so he could "redo this whole thing." According to Stevenson, Nelson-Janisse indicated that a new form could be obtained.

The following day, Nelson-Janisse hand-delivered a letter to Stevenson dated April 28, 2004. (Dep. p. 67-68, Exh. "E".) The letter stated:

> I have reviewed the medical certification and your requested accommodation against your current job description. Your permanent restrictions disqualify you from your current position in the Fort Wayne Police Department Records Bureau. Although we can accommodate the request for the use of the desk, this does not allow you to perform the essential job functions.

*Id.* The letter also explained that Stevenson was free to bid on other positions that met her current permanent restrictions or apply for disability benefits through the City's benefit department. She was also advised that "any changes to these restrictions must be submitted to us in a form of a Functional Capacity Evaluation ("FCE") and will be reviewed by the City of Fort Wayne's physician against

---

[3] Stevenson agrees that, based on the forms she submitted, it appeared that she could not perform the essential functions of her position and that there was no available accommodation that would permit her to perform the essential functions. (Stevenson Dep. pp. 54-55, 73-74, 123-124.)

5

any job description that you are applying for."⁴  Because Stevenson was then in an off work, but unpaid status, having no unused PTO or FMLA benefits remaining, she was offered an unpaid leave of absence. Mr. Pilarski sent Stevenson a further letter dated May 5, 2004, advising her that she had been placed on an unpaid leave of absence effective April 28, 2004. The cover letter Pilarski sent and the leave of absence form itself clearly explained that Stevenson's job was not protected during the leave and that her return to work was conditioned upon job availability. Stevenson understood that the City was not holding her job open during the leave of absence. (Stevenson Dep. p. 77.) Stevenson signed the leave of absence form and returned it to the City. She then went to see Dr. Coats, who arranged for an FCE, a test "to see if she could perform her job duties." (Dep. pp. 78-79.)

When Stevenson was granted her unpaid leave of absence, the Records Department was short of personnel and needed to fill Stevenson's position. (Verified Statement of Rarey ¶10; Verified Statement of Scott Ruf ¶10.) On May 6, 2004, the City posted Stevenson's position. Two internal bids were received including one from Carrie Forguson who was ultimately selected for the position to begin on June 8, 2004.

In the meantime, on May 24, 2004, Stevenson had an FCE performed by a physical therapist from Fort Wayne Orthopaedics. On or about May 28, 2004, the same date Stevenson's leave of absence was due to expire, Mr. Pilarski received a phone call from Ed Griffin, a union committee person, who advised that Stevenson had obtained her FCE and that she had been cleared to return to work. (Verified Statement of Pilarski ¶10.)  Pilarski explained that he had not seen any such

---

⁶The letter also informed Ms. Stevenson that she could appeal this decision in writing to Chloretha Davie ("Davie, Human Resource Director. While Stevenson telephoned Ms. Davie, she acknowledges that she never appealed the decision to. Davie in writing. (Dep. p. 69.)

6

paperwork, but that any such FCE would need to be given to Risk Management for review and follow-up. However, because Stevenson's 30 day leave of absence had expired, Pilarski extended her leave for an additional 30 days. Pilarski wrote Stevenson a letter dated June 3, 2004, advising her of the extension of her leave and again reminding her that her job was not protected during the leave of absence. (Dep. Exh. "J".) Stevenson signed the second 30 day leave of absence form and returned it to the City. Once again, this form stated that Stevenson's job was not protected. (Stevenson Dep. p. 94, Exh. "K".)

On June 4, 2004, Stevenson delivered a letter from Dr. Coats to Pilarski, along with a copy of her FCE. (Stevenson Dep. p. 86, Exh. "I".) The letter from Dr. Coats stated that Stevenson did suffer from rheumatoid and degenerative arthritis and, "Ms. Stevenson has occasional exacerbations of her arthritis, as would any of the 60% of the American population." This letter further stated that, "with medication and treatment, and when Ms. Stevenson was not having exacerbations, she is fully functional with no need for any employer accommodations and that, as of the date of the letter, this was her current state. (Dep. Exh. "I".)  Pilarski forwarded the letter from Dr. Coats and the FCE toNelson-Janisse, who, in turn and pursuant to City policy, sent the copy of the FCE to the City's physician, Dr. Larry Rowe.[5]

On June 14, 2004, Dr. Rowe wrote a letter concluding that Stevenson was capable of performing the essential job duties of her position without accommodation.  By this time, however, Stevenson's position was not available.  Subsequently, when Stevenson's leave of absence expired,

---

[5] It is the City's policy to have all FCE's reviewed by the City physician since an FCE is a tool used by doctors and must be interpreted by a physician. (Nelson-Janisse Verified Statement ¶¶10, 12 and 13).  According to the City, having Stevenson's FCE reviewed was all the more important because the opinion of Dr. Coats, as reflected in his June 4, 2004 letter differed so markedly from the Physician's Certificate prepared by Dr. Ranochak, who had stated that, as of April 21, 2004,  Stevenson was permanently disabled with significant permanent restrictions.

7

Pilarski wrote to her, explaining that there were no available positions and that because her leave had expired, her employment with the City was terminated. (Dep. pp. 95-96, Exh. "L".) When Stevenson received Pilarski's June 28, 2004 letter, she contacted the union, which then grieved her termination. (Dep. p. 96.)

In August 2004, a job vacancy occurred for a computer information technician, and the City posted the position. Stevenson applied for the position by delivering her application to Ruf. Stevenson also applied for a records technician position in August. She was not interviewed for either of these positions and was not hired. (Dep. p. 108, Exh. "M".)  Stevenson believes that a younger white person with less experience was hired for each of the positions for which she applied in the Police Records Division. (Dep. pp. 115-119.) According to the City, however, Stevenson was not interviewed or hired for the positions in Police Records because Ruf and Rarey believed that Stevenson had been untruthful when she had submitted her request for accommodation.

On September 16, 2004, Stevenson filed a charge of discrimination with the EEOC. (Dep. p. 119, Exh. "N".) Thereafter, Stevenson filed this lawsuit against the City of Fort Wayne, alleging disability, race, and age discrimination.

On September 21, 2005, an arbitration hearing was conducted before Arbitrator Ann Kenis on the grievance filed on behalf of Stevenson. One of the union's arguments was that the City had violated the ADA when it failed to accommodate Stevenson which, if true, would have violated the collective bargaining agreement. The parties were afforded full opportunity to present evidence and argument, including examination and cross examination of witnesses. The parties also filed post hearing briefs and, on November 21, 2005, Arbitrator Kenis issued her opinion and award. (Exh. B to City's Motion for Leave to File Amended Answer; Docket #15.) The Arbitrator concluded that

8

Stevenson did not meet the definitional test for ADA protection because, according to the Request for Accommodation and Physician's Statement of Dr. Ranochak, she was not able to perform the essential functions of her job, with or without reasonable accommodation and that she did not, therefore, qualify for any further statutory protections. (Order p. 14.) The Arbitrator also found that the City did not violate the ADA by placing Stevenson on an unpaid leave of absence. The Arbitrator concluded that the City was justified in requiring that Stevenson obtain an FCE. *Id.* Nonetheless, the Arbitrator also found that the City breached an implied contract term of reasonableness when it filled Stevenson's position, because, at the time the position was filled, the City had been informed by the Union that Stevenson had passed the FCE and the City was awaiting confirmation from its physician. (*Id.* at 15.) The Arbitrator therefore ordered Ms. Stevenson reinstated to her former position. The Arbitrator also, however, denied the request for back pay.[6]

Arbitrator Kenis conditioned Stevenson's reinstatement upon her demonstration of her physical fitness to return to work. (*Id.* at 18.) Dr. Rowe examined Stevenson and ordered another FCE. (Dep. p. 124, Exh. "O".) The second FCE confirmed the first FCE in its finding that Stevenson

---

[6]The Arbitrator concluded: "[w]hether or not Grievant originally overstated her medical incapacities to fit within ADA guidelines and then tried to downplay their significance when she realized that her medical condition could put her job in jeopardy is an issue the Arbitrator need not resolve at this juncture, although it is clearly relevant to remedy, as discussed below . . . The entire chain of events was created by the Grievant herself when she presented a Physician's Certificate indicating that she had permanent disabling restrictions that required accommodation. This "mistake", as Grievant later called it, led to the leave of absence and the need for additional medical information to determine whether Grievant was in fact able to perform her job. Had she presented the correct Physician's Certificate, the sequence of events leading to the severance of her employment could have been cut short or perhaps avoided. There is an additional reason for my reluctance to grant back pay. In the four months preceding the April 2004 meeting, Grievant was at work approximately half the time. This fact, and the Grievant's course of conduct, must affect the remedy ordered. Grievant was more than an innocent bystander here. Moreover, there is no reason to conclude that the Grievant's attendance pattern would be any different, despite her clearance to return to work." (Order pp. 15, 17-18.)

is able to work at the light, medium physical demand level for eight hours per day.[7]

Dr. Rowe reviewed the report and confirmed that Stevenson was capable of performing her job duties. (Pilarski V.S. ¶15.) Stevenson then returned to work effective December 12, 2005. She is currently under no restrictions or limitations from her doctor. (Dep. p. 148).

After returning to her position in Police Records, Stevenson bid into a clerical position in the Neighborhood Code Enforcement Division of the City of Fort Wayne, where she remains employed presently.

## **DISCUSSION**

In her complaint, Stevenson asserts violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., the Age Discrimination in Employment Act, ("ADEA") 29 U.S.C. §621, *et seq.,* and Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §2000e, *et seq.* In particular, she contends that the City terminated her employment due to her disability or perceived disability in violation of the ADA and that the failure of the City to rehire her when she applied for open positions was due to age and/or race discrimination. Each of these claims shall be addressed *ad seriatim*.

## **ADA**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement,

---

[7] The FCE indicated Stevenson could lift up to 50 lbs. occasionally with her back, 30 lbs. occasionally with her legs, that she can carry infrequently 50 lbs., carry 35 lbs. frequently with a two hand carry. She can engage in constant bending, frequent squatting, occasional kneeling, frequent stair climbing. She has the constant ability to sit, stand, walk, reach forward, reach above her head, etc. (Dep. p. 128, Exh. "O".) The report also notes that Stevenson does not use a cane to walk, her speed of walking is average, there is no limp and that Stevenson was able to do all of the functions of her job. (Dep. pp. 129-130.)

10

or discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a); *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir.2001). In addition, "[t]he Act also provides that an employer discriminates against a qualified individual with a disability by 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." '*McPhaul v. Board of Comm'rs of Madison County*, 226 F.3d 558, 563 (7th Cir.2000), quoting 42 U.S.C. § 12112(b)(5)(A)). As such, "there are two distinct categories of disability discrimination claims: failure to accommodate and disparate treatment." *Basith*, 241 F.3d at 927, quoting *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1021-22 (7th Cir.1997). Because these two distinct categories exist, "it is important for the plaintiff to be clear about the nature of the claim he or she is asserting." *Weigel v. Target Stores,* 122 F.3d 461, 464 (7th Cir. 1997).

In this case, Stevenson appears to allege solely a disparate treatment claim.  To establish such a case, Stevenson must show that (1) she was disabled or her employer perceived her as disabled within the meaning of the ADA;  (2) she was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of the employment position; and (3) she suffered an adverse employment action due to her disability.  Dyke v. O'Neal Steel, Inc., 327 F.3d 628, 631 (7th Cir. 2002).   In its motion, the City contends that Stevenson cannot show that she suffers from a disability within the meaning of the ADA and second, that it did not perceive her as disabled.

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); see also *Wright v.*

11

*Illinois Dept. of Corr*., 204 F.3d 727, 730 (7th Cir.2000).  Here, it appears that the City will agree that Stevenson has rheumatoid arthritis.  Rather, the focus of its brief is on whether that physical impairment substantially limits one or more of Stevenson's major life activities.

The term substantially limits means that an individual is "(i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j). The Supreme Court, in *Toyota Motor Mfg. Ky., Inc., v. Williams*, 534 U.S. 184 (2002), held that to be "substantially limited in a major life activity, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long-term." *Toyota,* 534 U.S. at 197-98.  The determination of whether an impairment substantially limits a person's major life activities is an individualized inquiry. *Toyota*, 534 U.S.at  198-99.

To be sure, there is no exhaustive list of what tasks are central to most people's daily lives. However,  the courts have provided some examples. See *Toyota Motor*, 534 U.S. at 197, 202 (listing as examples: walking, seeing, hearing, doing household chores, bathing, and brushing teeth); *Mack v. Great Dane Trailers*, 308 F.3d 776, 781 (7th Cir.2002) (listing as examples taking care of one's self and lifting a pencil or toothbrush); *Mays v. Principi*, 301 F.3d 866, 869 (7th Cir.2002) (suggesting that walking, seeing, reproduction, and the use of an arm would be tasks that are central to most people's daily lives).  Setting aside temporarily these examples, *Toyota Motor* makes it clear that the word "substantially" "in the phrase 'substantially limits' suggests 'considerable' or 'to a large

12

degree.' The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." 122 S.Ct. at 691.  Thus, the terms "major" and "substantial" are "interpreted strictly to create a demanding standard for qualifying as disabled," as Congress in describing its purpose in passing the ADA likely did not contemplate that anyone with an impairment that precluded the performance of merely isolated, unimportant tasks would be considered disabled. *Id.*

In this case, there is simply no genuine issue of material fact as to whether Stevenson is disabled.  She has identified no major life activities that she cannot perform because of her arthritis and, even more damning, she agrees that the latest FCE she underwent accurately describes her abilities.  She can walk, bend, reach, and stand on a constant basis and her range of motion is normal.  Stevenson has testified that she is able to perform tasks around her home, bend, kneel, climb stairs and squat.  She has further testified that there are no duties of her Records job that she could not perform on a regular basis while employed in the Records Division and she currently has no restrictions working at her present job as a Neighborhood Code Enforcement specialist.  Further, even when she has "bouts of arthritis" she has indicated that the disabling effects are alleviated with medication.  Thus, there is not even a scintilla of evidence supporting Stevenson's contention that she is disabled within the meaning of the ADA.

As for whether the City regarded Stevenson as disabled, it is "not enough for [a plaintiff] to show that [her employer] was aware of [her] impairment; instead [she] must show that [the employer] knew of the impairment and believed that [she] was substantially limited because of it."

13

*Moore v. J.B. Hunt Transport, Inc.,* 221 F.3d 944, 953 -954 (7th Cir. 2000).[8] It is similarly not enough for the plaintiff to put forth evidence that the employer knew of her disability and subsequently terminated her.  *Id.* at 954.

In this case, the evidence clearly supports the City's assertion that it placed her on a leave of absence (ultimately resulting in termination) because even with the accommodations she requested for her rheumatoid arthritis, Stevenson was unable to perform the essential functions of the job.  Stevenson has no evidence that the City perceived her as impaired in performing a broad range of jobs in various classes, or substantially limited regarding any other major life activity.  Indeed, the record reflects that City's actions were a response to specific restrictions identified by Dr. Ranochak, and were not based on myth, fear or stereotype.  As a result, Stevenson has not set forth a genuine issue of material fact regarding whether the City perceived her as disabled.

Given the above analysis, Stevenson has not produced any evidence establishing the first prong of a disparate impact type ADA claim.[9]   Accordingly, the City's Motion for Summary Judgment is GRANTED.

---

[8] Indeed, the Interpretive Guidance to the regulations implementing § 12102(2)(C) explains the need for the "regarded as" language in this way:

> [A]lthough an individual may have an impairment that does not in fact substantially limit a major life activity, the reaction of others may prove just as disabling....[I]f an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on "myth, fear or stereotype," the individual will satisfy the "regarded as" part of the definition of disability.

29 C.F.R. Pt. 1630, App. § 1630.2( *l*) at 352 (1999). The concern, therefore, is that employers will act on a misunderstanding of an individual's impairment with the result that a qualified, nondisabled person will be precluded from employment

[9] Even if this were a reasonable accommodation case, Stevenson would fail since she would still have to show that she suffered from a "disability" which could have been reasonably accommodated thereby allowing her to perform the essential functions of her job in the Records Division.

14

**Race and Age Discrimination Claims**

Stevenson fares no better on her race and age discrimination claims as she did on her ADA claim.  As noted previously, Stevenson contends that she was not hired for open positions with the City during the time of her leave of absence due to age and race discrimination.

Discrimination may be proven either directly, such as by an admission by the defendant, or indirectly under the burden-shifting method established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 299-302 (7th Cir.2004); *Alexander v. Wis. Dep't of Health & Family Servs.,* 263 F.3d 673, 682 (7th Cir.2001). For her discrimination claim, Stevenson presents no evidence or argument relating to the direct method, opting instead to proceed (it appears) only under the indirect method. *McDonnell Douglas* places the initial evidentiary burden on the plaintiff to establish a prima facie case, which is the same whether the claim is brought under Title VII,  § 1981 or the ADEA.   And thus, to survive summary judgment, Stevenson must navigate through the oft-recited *McDonnell-Douglas* standard:

> First, a plaintiff must establish, by a preponderance of the evidence, a prima facie case of discrimination. If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden shifts to the defendant to come forward with evidence of a 'legitimate, nondiscriminatory reason' for discharging the plaintiff. Finally, 'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

A plaintiff successfully proffers a prima facie case of race / age discrimination when she shows: (1) that she is a member of a protected class; (2) she applied for and was qualified for the

15

positions sought; (3) plaintiff was not hired for the position; and (4) someone not in the protected class was hired. In this case, the City presumes the existence of a prima facie case and, rather than focus on the intricacies of the prima facie case, attacks its own burden head on, focusing on whether it provided a legitimate non-discriminatory reason for not hiring Stevenson for the positions for which she applied. The City argues that it did not hire or even interview Stevenson for the jobs she sought because they believed she had been untruthful in her original claim of disability. Both Rarey and Ruf testified that they believed Stevenson had intentionally claimed a false disability to manipulate the system and obtain additional time off of work or relief from job responsibilities that she was capable of performing. Given this explanation, the City has met its burden of producing a valid, non-discriminatory reason for the employment decision.

At this point to surpass summary judgment, Stevenson must present evidence that the stated reason is a pretext. A pretext is a lie. The Seventh Circuit recently clarified the definition of pretext in *Forrester v. Rauland-Borg Corp.,* 453 F.3d 416 (7th Cir.2006) wherein the court indicated that plaintiffs must present evidence that the stated reason is not the true reason for the actions; it is not sufficient to prove that there is no factual basis for the stated reason or the stated reason was not sufficient to motivate the action. He must show that the stated reason is false. *Forrester,* 453 F.3d at 418-19.

Here, there is simply no evidence presented to draw into question the explanation provided by the City. There are no facts presented nor admissible evidence proffered which would allow a fact-finder to conclude that the reason proffered by the City, i.e., Stevenson had deliberately lied about being disabled, was not the true reason for its failure to hire her for open positions with the City. Because Stevenson has not demonstrated that the reason was pretextual, she cannot establish

16

a case of discrimination under *McDonnell-Douglas*. Accordingly, the City's Motion for Summary Judgment is GRANTED.

## **CONCLUSION**

Based on the foregoing, the City's Motion for Summary Judgment is GRANTED.

Entered: October 10, 2006

s/ William C. Lee<br>United States District Court